UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DIANNE FREEMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 11-cv-1090 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## O P I N I O N & O R D E R

This matter is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 1), and Respondent's Motion to Dismiss Petitioner's § 2255 Motion (Doc. 6), to which Petitioner has responded in opposition (Doc. 7). For the following reasons, Respondent's Motion to Dismiss is granted, and Petitioner's § 2255 Motion is dismissed.

Petitioner has requested an evidentiary hearing on her claims. She is entitled to an evidentiary hearing only if she has alleged facts that, if proven, would entitle her to relief. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). As the Court finds that Petitioner's § 2255 Motion raises no cognizable claim, and as any factual issues relevant to Petitioner's claims can be resolved on the record, an evidentiary hearing is not required. *Oliver v. United States*, 961 F.2d 1339, 1343 n. 5 (7th Cir. 1992) (citing *United States v. Frye*, 738 F.2d 196 (7th Cir. 1984) ("No hearing is required in a section 2255 proceeding if the motion raises no cognizable

claim,... or if the factual matters raised by the motion may be resolved on the record before the district court.").

**PROCEDURAL HISTORY**

Petitioner was indicted on January 28, 2009; she was charged with Conspiracy to Commit Mail Fraud, Bank Fraud, Conspiracy to Commit Money Laundering, and Embezzlement and Misapplication by Bank Employee. (09-cr-10006: Doc. 1). On April 20, 2009, Petitioner pled guilty to Conspiracy to Commit Money Laundering, and Embezzlement and Misapplication by Bank Employee, pursuant to a plea agreement filed on that date. (09-cr-10006: Doc. 26). The plea agreement contained provisions waiving the right to appeal the conviction or sentence, as well as to collaterally attack the conviction or sentence. (09-cr-10006: Doc. 26 at 6-8). She was sentenced to 97 months incarceration, three years supervised release, restitution in the amount of $4,839,858.08 jointly and severally with co-defendant Mikel Freeman (her husband), and a $200 special assessment. (09-cr-10006: 9/21/09 Minute Entry). Petitioner's counsel filed a Notice of Appeal on September 29, 2009, which was voluntarily dismissed on March 19, 2010. (09-cr-10006: Doc. 101).

The Court received Petitioner's instant § 2255 Motion on March 3, 2011 (Doc. 1). In it, Petitioner claims that her counsel provided ineffective assistance in several ways: he failed to research applicable law relating to the money laundering count; he erroneously advised Petitioner to plead guilty to that count; he failed to argue that Mikel Freeman's bank fraud loss calculations should not be used in calculating

2

Petitioner's embezzlement sentence; he advised Petitioner to agree to a plea bargain waiving her right to appeal; he moved for the dismissal of her appeal without filing a brief; he advised Petitioner to agree to waive her right to collaterally attack his effectiveness without properly advising her; and he moved for the dismissal of her appeal without her knowledge or consent.

## DISCUSSION

As noted above, Petitioner's plea agreement contained provisions waiving her right to appeal or collaterally attack her conviction or sentence, including on the grounds of ineffective assistance of counsel; Respondent now relies on that waiver of Petitioner's collateral attack rights in its Motion to Dismiss. (09-cr-10006: Doc. 26 at 6-8; Doc. 6). Such waivers are generally upheld and enforced, unless the "plea agreement was involuntary, the district court 'relied on a constitutionally impermissible factor (such as race),' the 'sentence exceeded the statutory maximum,' or the defendant claims 'ineffective assistance of counsel in connection with the negotiation of [the plea] agreement.'" *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (quoting *Jones v. United States*, 167 F.3d 1142, 1144–45 (7th Cir. 1999)). Here, Petitioner argues that the waiver of her right to collaterally attack her sentence under § 2255 is unenforceable because it is tainted by the ineffective assistance of her counsel.[1] A petitioner who wishes to have a plea

---

[1] The remaining claims in Petitioner's § 2255 Motion relate to her attorney's performance after her plea was entered: his alleged failure to argue that Petitioner's sentence should not be based on the facts underlying her husband's crimes that were unconnected to her, and his filing of an appeal. As these do not implicate Petitioner's decision to agree to the plea bargain, they need not be discussed in the analysis of whether Petitioner effectively waived her right to bring the instant §

3

agreement's terms invalidated must show both that her attorney provided constitutionally ineffective assistance, and that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Petitioner argues in part that the waiver was not executed freely, knowingly, and voluntarily, because neither her counsel nor the Court advised her "of her right to conflict free counsel." (Doc. 1 at 12). Petitioner cites to no specific conflict of interest between herself and her counsel, but instead appears to argue that her counsel was inherently conflicted in advising her as to the waiver of the right to challenge his effectiveness. If this argument were meritorious, almost all appeal and collateral-attack waivers would be invalid, as most defendants are advised as to those waivers by the very attorneys whose representation would be at issue. Related to this argument is Petitioner's claim that her counsel was ineffective simply because he advised her to agree to a waiver of her appeal and collateral attack rights, and that the waiver is thus unenforceable.[2] It is well-established that

---

2255 Motion. *See Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000) (*citing Jones*, 167 F.3d at 1145).

[2]     Petitioner asserts that she gained nothing from the waiver, while her attorney and the government benefitted. (Doc. 1 at 27-30). On the contrary, as has been explained by the Seventh Circuit, "one reason for permitting criminal defendants to agree to waive their rights as a part of a plea negotiation process was articulated by the Supreme Court: '[I]f the prosecutor is interested in 'buying' the reliability assurance that accompanies a waiver agreement, then precluding waiver can only stifle the market for plea bargains. A defendant can 'maximize' what he has to 'sell' only if he is permitted to offer what the prosecutor is most interested in buying.'" *United States v. Chapa*, 602 F.3d 865, 868 n. 1 (7th Cir. 2010) (*quoting*

such waivers are enforceable in most cases – they are not inherently invalid. These arguments are based on the idea that waivers of appeal and collateral attack rights are inherently unfair and should not be enforced, but this is not the rule in the Seventh Circuit. *Jones*, 167 F.3d at 1145 ("waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver.").

A waiver will be enforced "if its terms are 'express and unambiguous,' and the record shows that the defendant 'knowingly and voluntarily' entered into the agreement. *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010) (*quoting United States v. Jemison*, 237 F.3d 911, 917 (7th Cir. 2001); *United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997)). To avoid the effect of her waiver, Petitioner must show that she did not know and understand either the terms of the plea agreement or the elements of the crime to which she pled guilty, which requires an examination of "the language of the plea agreement itself and also…the plea colloquy between the defendant and the judge." *Id.* (*citing United States v. Sura*, 511 F.3d 654, 661 (7th Cir. 2007); *Woolley*, 123 F.3d at 632). Here, there is no doubt that the terms of the collateral attack waiver are "express and unambiguous," and Petitioner does not claim otherwise.

---

*United States v. Mezzanatto*, 513 U.S. 196, 207 (1995)). The waiver is part of the inducement for the prosecutor to enter into the bargain; there is no guarantee that the prosecutor would have agreed to the same terms, including the dismissal of all but two of the charges against her and to recommend a three point reduction in Petitioner's Guidelines offence level, if the waiver were eliminated. Relatedly, Petitioner claims that her attorney failed to obtain the best possible bargain with the government for her, but such a claim does not undermine the fact that Petitioner knowingly and voluntarily agreed to the bargain that he did negotiate.

Likewise, Petitioner cannot overcome her own testimony that she knew and understood both the elements of the crimes to which she pled and the terms of the agreement. During the plea colloquy, the undersigned engaged Petitioner in a detailed discussion of her plea agreement, as well as of the crimes to which she was pleading guilty. (09-10006: Doc. 108, hereinafter referred to as "Tr."). The Court explained the elements of each crime in detail, and Petitioner testified that she understood them; Petitioner later described for the Court her activities related to both the money laundering and embezzlement counts. (Tr. 7-10, 22-24). The Court also explained that Petitioner potentially faced imprisonment of up to 50 years, and that the sentence imposed may vary from what her attorney had estimated. (Tr. 10-14). As to the plea agreement's terms, as in *Chapa*, this judge, also an "experienced trial judge," "conducted a searching inquiry to ascertain that the Defendant understood all of the terms of the plea agreement. The judge highlighted all of the terms including potential penalties and sentencing, and [defendant] indicated that [s]he understood them." *Id*. at 869. Petitioner "acknowledged that [s]he had waived [her] right to appeal [and collateral attack], and that no threats, promises, representations, or agreements other than those set forth in the plea agreement had induced [her] to plead guilty." (Tr. 4-6, 14-17). *Id*. "Such representations, made by a defendant under oath at a plea colloquy, are entitled to a presumption of correctness." *Id*. (*citing Bowlin*, 534 F.3d at 660).

Where the Court has made "a complete record demonstrating that [the defendant] understood the terms of the waiver," the plea colloquy complies with

6

Federal Rule of Criminal Procedure 11, and the Court can rely on it to determine that Petitioner knowingly and voluntarily waived her collateral attack rights. *Id.* (citing *United States v. Schmidt*, 47 F.3d 188, 191 (7th Cir. 1995)). In addition, the Court "may discredit any reason that a defendant gives for withdrawing [her] guilty plea that contradicts [her] testimony at a plea hearing." *United States v. Weathington*, 507 F.3d 1068, 1072 (7th Cir. 2007) (citing *United States v. Walker*, 447 F.3d 999, 1005 (7th Cir.2006); *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir.2002)).

Petitioner makes much of the fact that she is not an attorney, and argues that her testimony at the plea colloquy is thus "functionally irrelevant" to the Court's analysis of whether her waiver of her right to collaterally attack her sentence is enforceable. (Doc. 7 at 7-9). She claims that her testimony indicating that her attorney had competently represented her was merely her "opinion" as to her attorney's performance, and is not determinative of whether he fulfilled his duty of constitutionally effective representation. In addition, she now claims that she did not understand that she had waived her appeal and collateral attack rights, though she testified that she did.[3] While the Court has some sympathy for the difficulty a

---

[3] To the extent Petitioner is claiming that her attorney failed to explain the appeal and collateral attack waivers to her, this claim must fail the prejudice requirement, as the Court effectively cured any such misunderstanding during the plea colloquy. (Tr. 14-17). *See Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) ("Bridgeman was aware of the consequences of his guilty plea despite counsel's alleged [erroneous] prediction; thus, his attorney's representation did not render his plea unwitting or involuntary."); *Barker*, 7 F.3d at 633 ("even if advice from Mr. Barker's trial attorney had led to his misunderstanding of the consequences of his guilty plea, any such confusion was cured by the trial court"). If Petitioner was surprised or confused when the Court advised her as to the waiver

7

criminal defendant, who is rarely an expert in the law, has in deciding whether to plead guilty or risk conviction at trial, a plea colloquy is not merely a customer satisfaction survey. As noted above, the Court is entitled to rely on a defendant's sworn testimony as to her counsel's performance, as well as regarding her knowing and voluntary guilty plea and acceptance of a plea agreement at the plea colloquy. *See, e.g., Chapa*, 602 F.3d at 869. Moreover, if a defendant is confused as to the terms or effect of her plea agreement, the plea colloquy offers her the opportunity to express her confusion to the Court, and the Court here asked questions specifically chosen to address the relevant issues. Petitioner was advised by the Court of the nature of the crimes she was pleading guilty to, of the possible sentence, and of the waiver provisions in the plea agreement, and she testified under oath that she understood them and was voluntarily pleading guilty and accepting the plea agreement, including the waiver provisions. Without a "compelling explanation" for the instant allegations that contradict her sworn testimony, Petitioner cannot escape the presumption of truthfulness to which the testimony is entitled. *United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008); *Weathington*, 507 F.3d at 1072; *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005); *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986). Petitioner presents no such "compelling explanation."

Petitioner argues that her decision to plead guilty was tainted by improper advice from her attorney, as he "advised [her] to plead guilty to a money laundering

---

provisions, she should have said so, rather than testifying (falsely, she now apparently asserts) that she was aware of, understood, and agreed to them.

conspiracy for which she was not guilty," to which she agreed because he did not explain that the money laundering count would carry a greatly increased sentence. (Doc. 1 at 13). Essentially, Petitioner claims that she was induced to plead guilty to the money laundering count by her counsel's failure to inform her that her sentence could be dramatically increased by the inclusion of that count. However, an attorney's error relating to the calculation of a sentence does not render a guilty plea invalid. While a "mistake about the substantive offense goes to the heart of the guilty plea; a mistake about the possible sentence…does not." *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008). The Seventh Circuit has "repeatedly held that 'the fact that a defendant underestimated his sentence when entering his plea is not a fair and just reason to permit him to withdraw that guilty plea." *Id.* (*quoting United States v. Gilliam*, 255 F.3d 428, 433–34 (7th Cir. 2001)). *See also Gilliam*, 255 F.3d at 433 (citing *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000)) ("an attorney's prediction or representation regarding the length of a client's sentence, if later proven to be inaccurate, will not necessarily render the client's plea unwitting or involuntary"). Though Petitioner now claims that she was not guilty of the crime of money laundering (in contravention of her prior sworn testimony), she does not claim that she misunderstood the elements of that crime when she pled guilty to them; she merely asserts that she misunderstood her sentencing exposure under that count, which does not negate the plea.[4]

---

[4] Moreover, the Court explained to Petitioner at her plea hearing that she was potentially subject to imprisonment for up to 50 years, negating any claim that she was induced to plead by a mistaken understanding of her sentencing exposure. (Tr. 11-12). *See Bridgeman*, 229 F.3d at 592; *Barker*, 7 F.3d at 633. She testified that she

9

Petitioner has not alleged facts that, if proven, would undermine her testimony that she understood and agreed to her guilty plea and plea agreement, and thus the Court must hold that Petitioner did knowingly and voluntarily agree to waive her right to mount a collateral attack on her conviction and sentence under § 2255.

### CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing § 2255 Proceedings, the Court "must issue or deny a certificate of appealability when it enters an order adverse to the applicant." A certificate of appealability may only be issued where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Further, where the district court denies a petition on procedural grounds, a petitioner must make a showing that reasonable jurists "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. If the district court denies the certificate, a petitioner may request that a circuit judge issue one. FED. R. APP. P. 22(b)(1)(3).

Based upon the record before it, the Court cannot find reasonable jurists would debate that Petitioner's claim is barred by the enforceable waiver contained

---

understood that she faced up to 50 years in prison, and her current claim that she did not understand this fact is belied by her contrary testimony. *Weathington*, 507 F.3d at 1072-73.

in the plea agreement, to which Petitioner knowingly, freely, and voluntarily agreed. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (Doc. 6) is GRANTED, AND Petitioner's § 2255 Motion (Doc. 1) is DISMISSED WITH PREJUDICE. IT IS SO ORDERED.

CASE TERMINATED.

Entered this <u>6th</u> day of December, 2011.

                                                   s/ Joe B. McDade
                                                  JOE BILLY McDADE
                                    United States Senior District Judge